UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM TAYLOR,<br><br>        Plaintiff,<br><br>    v.<br><br>INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES, et al.,<br><br>        Defendants. | Case No. 21-cv-08712-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 40 |

Defendants International Union of Painters and Allied Trades ("IPUAT"), Steve Bigelow, Luis F. Robles, James A. Williams, Jr., Robert Collins, Richard Northam, and Clayton McBride ("the defendants"), seek to dismiss pro se plaintiff William Taylor's Second Amended Complaint ("SAC"), in which Taylor makes 12 allegations that the defendants violated various sections of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA") and Labor Management Relations Act of 1947 ("LMRA").

The motion is GRANTED in part and DENIED in part. Claims Three, Four, Five, and Twelve are DISMISSED without leave to amend, as they do not sufficiently state a claim for relief arising under any of the relevant statutes. The remaining claims may proceed, but only under section 501 of the LMRDA. Given the number of claims and statutory provisions at play, my decision is explained in further detail below.

**BACKGROUND**

Taylor is a journeyman member of IUPAT, District Council 36, Local Union 510. SAC [Dkt. No. 35] ¶ 13; Mot. to Dismiss ("MTD") [Dkt. No. 40] 4:20–22. The IUPAT represents workers in the finishing trades, including industrial and commercial painters, drywall finishers, wall coverers, glass workers, and convention and show decorators. SAC ¶ 11; MTD at 4:16-19. His suit alleges that union officials engaged in a series of financial and other improprieties.

United States District Court
Northern District of California

Starting in 2014 or 2015, Taylor worked as an instructor in a Local Union 510 training program called the Joint Apprentice Training Committee ("JATC"). *Id.* ¶ 14. The JATC was funded by a Local 510 trust ("the training trust"), to which members contributed different amounts for all hours worked under their operative collective bargaining agreements. *Id.* ¶¶ 16-17. From 2010 to 2012, members contributed 41 cents for all hours worked. *Id.* ¶ 17. Over time, that amount rose to $1.13. *Id.* Taylor alleges that Bigelow was listed as a trustee of the training trust during the fiscal years 2015 and 2016. *Id.* ¶ 18.

On December 31, 2016, the trust was terminated without notice to the Local 510 membership. *Id.* ¶ 20. The money in the training trust was moved to another trust fund, which listed Bigelow and Robles as trustees. *Id.* ¶¶ 21, 46. Despite the training trust's termination, Taylor alleges that two collective bargaining agreements negotiated by Bigelow and Robles in April 2018 and April 2021 both allocated $1.13 per hour worked to the training trust. *Id.* ¶ 46.

Next, Taylor alleges, from 2015 through 2017, union officials did not make financial reports to the membership as required by the IUPAT constitution. *Id.* ¶ 22. Beginning in January 2017, Taylor made several requests to District Council 36 officers for information on Local 510's finances. *Id.* ¶ 24. In July of that year, he authored a motion seeking an audit of the training program and "all financial information and records related to it," which the membership passed. *Id.* ¶ 25. However, Taylor alleges, Bigelow and another union official ignored the motion and did not conduct the audit. *Id.* ¶ 26.

In February 2018, Taylor filed intra-union charges against Bigelow and other union officials to compel them to comply with the audit and provide other information about the union's finances. *Id.* ¶¶ 28-29. In August of that year, after a trial was held in which Bigelow was found "not guilty," Bigelow gave Taylor two tax forms related to the trust fund. *Id.* ¶¶ 34, 39-40. Taylor contends that this "in no way satisfied any request I or the membership made." *Id.* ¶ 39.

The next set of allegations relate to an agreement between the IUPAT and the state of California, which provides funds for training apprentice and journeyman members of the union. *Id.* ¶ 49. According to Taylor, under the direction and supervision of Northam, Robles, Bigelow, and Williams, these members have not been given equal training or training opportunities, and

2

there has been inaccurate reporting of the training provided in violation of the agreement. *See id.*

Next, Taylor alleges that union officials violated Local 510's operative collective bargaining agreement by failing to publish or otherwise disseminate to members the guidelines developed by the JATC and used to dispatch apprentices to Freeman Expositions, LLC. *Id.* ¶ 50. Taylor further alleges that Northam violated Local 510's "seniority dispatch procedures" and collective bargaining agreement by accepting work from Freeman Expositions outside the rules of the agreement and dispatch system. *Id.* ¶ 51. And, Taylor contends, under the "supervision or influence" of Robles, Bigelow, and Northam, apprentices have been assigned to work for Freeman Expositions in violation of the collective bargaining agreement. *Id.* ¶ 52.

According to Taylor, after he filed this suit, union officials—including Northam, Robles, Bigelow, Collins, and McBride—retaliated against him and attempted to chill his speech at union meetings, including by interrupting him, complaining about people who bring lawsuits related to union activity, implying that Taylor should "shut up," or allowing this to occur. *See id.* ¶¶ 56-58.

The next set of allegations relate to various union referendums. Taylor alleges that on July 23, 2018, he received notice of a bylaws referendum set for August 4, 2018. *Id.* ¶ 61. He wrote a letter to union officials stating that he believed proceeding with the referendum would violate the IUPAT constitution and requesting that they "take corrective action." *Id.* No such action was taken. *Id.* ¶ 62. According to Taylor, District Council 36 did not have the requisite approval of council delegates before submitting the referendum to members and did not provide members with proper notice of the vote. *Id.* ¶¶ 65-66. Taylor said he later challenged the referendum in a letter to union officials, but never received a response. *Id.* ¶ 71.

Similarly, Taylor alleges that another referendum was held on April 17, 2021, in violation of state and local laws and public health orders "prohibiting such events for such large groups of people then in effect because of the Covid-19 pandemic." *Id.* ¶ 73. Taylor again challenged this referendum and asked for it to be held again by mail. *Id.* ¶ 75. Taylor alleges that he challenged two other referendums in 2021, for the same reasons. *Id.* ¶ 80. In September 2021, he alleges that he received a letter from Williams declining to take action. *Id.* ¶ 81. Taylor tried to delay a March 30, 2022, referendum on a collective bargaining agreement, citing the same procedural grounds,

this time via a temporary restraining order, which I denied. *See id*. ¶ 82. Taylor also challenged this referendum. *Id*. ¶ 88. Williams denied his request. *Id*. ¶ 89.

Finally, Taylor contends that Local 510's pension fund is being mismanaged by "backfilling," which he asserts "denies the members of earned compensation and harms all members' financial interests." *Id*. ¶¶ 90-93.

Taylor brought this suit on November 9, 2021. Dkt. No. 1. I have twice dismissed his claims for failing to plausibly state claims under section 501 of the LMRDA. See Dkt. Nos. 15, 34. He filed his SAC on May 5, 2022, asserting not only claims under section 501, but also under section 101 of the LMRDA and sections 301 and 302 of the LMRA. *See* Dkt. No. 35. The defendants moved to dismiss the SAC on May 26, 2022. Dkt. No. 40. Pursuant to Civil Local Rule 7-1(b), this matter is suitable for disposition without oral argument.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiffs are not required to set out the facts supporting their claim in detail, but a statement "that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001) (citation omitted).

Under Rule 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This standard is not akin to a probability requirement, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

4

court accepts his allegations as true and draws all reasonable inferences in his favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Where a plaintiff is proceeding pro se, the court has an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, pro se pleadings must still allege facts sufficient to allow a reviewing court to determine whether a claim has been stated. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

**DISCUSSION**

The defendants argue that Taylor's SAC should be dismissed for both procedural and substantive reasons. *See generally* MTD. As an initial matter, I agree that portions of the SAC remain difficult to follow at times. I recognize that Taylor is representing himself in this matter—no easy task in federal court—and appreciate the efforts that he has made to more clearly state his claims. As amended, the SAC still covers a wide-ranging series of events, from alleged financial improprieties and violations of collective bargaining agreements to faulty elections and comments made at union meetings. *See generally* SAC. It also adds new individuals, along with the IUPAT, as defendants. *See id*. Taken together, the breadth of allegations and number of defendants and claims make for an SAC that, in some places, takes some effort to untangle.

That said, Taylor has stated at least some claims upon which relief may be granted and has stated them in a manner that satisfies Rule 8. Unlike the FAC, the SAC streamlined many of Taylor's claims such that the defendants have sufficient notice of the specific allegations against them. True, the SAC is longer than the FAC, but the fact that a complaint is 63 pages long does not warrant dismissal on its own. Importantly, the SAC no longer relies on the accompanying exhibits for key factual allegations, such as who was involved in the alleged misconduct and how. The body of the SAC states the specific allegations supporting the plausible claims, which are reiterated later in the specific claims for relief. Moreover, Taylor cites to specific paragraphs

5

when stating those claims for relief, further directing the defendants to the relevant allegations. Not all of his claims survive, but many do, for the reasons explained below.

I.     **LMDRA SECTION 501 CLAIMS**

Section 501(a) of the LMRDA imposes upon a union's "officers, agents, shop stewards, and other representatives" the duty to, among other things, "hold its money and property solely for the benefit of the organization and its members;" to manage, invest, and spend according to the union's governing documents; and "to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization." 29 U.S.C. § 501(a). When one of those officers is alleged to have violated those duties, section 501(b) allows union members to sue in district court. *Id.* § 501(b).

The Ninth Circuit has rejected a narrow reading of section 501, holding that "union officials have fiduciary duties even when no monetary interest of the union is involved," and that Congress intended for section 501 to apply to "fiduciary responsibilities of union officials, agents, and representatives, in any area of their authority." *Stelling v. Int'l Bhd. of Elec. Workers Loc. Union No. 1547*, 587 F.2d 1379, 1386-87 (9th Cir. 1978). For example, the Ninth Circuit has held that an allegation that a defendant has "denied the membership of the union the constitutionally guaranteed right to vote is a sufficient assertion of a breach of trust . . . to invoke the jurisdiction of [section] 501." *Id*. at 1387. That said, courts do not "have power to intervene in intra-union affairs at slight provocation or on any invitation." *Id*. Rather, the court should intervene "only with great reluctance." *Id.*

Two conditions must be met before bringing suit under section 501. *See Cowger v. Rohrbach*, 868 F.2d 1064, 1066 (9th Cir. 1989). First, the union, its governing board, or its officers must have refused or failed "to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization." 29 U.S.C. § 501(b). Second, a suit may only be filed upon leave of the court, "obtained upon verified application and for good cause shown." *Id*. "Because section 501(b) extends the jurisdiction of the federal courts, it is strictly construed." *Flaherty v. Warehousemen, Garage & Serv. Station Emp. Loc. Union No. 334*, 574 F.2d 484, 487 (9th Cir. 1978).

1        Taylor again asserts all 12 of his claims under section 501.  *See generally* SAC.  In my
2   prior Order dismissing Taylor's claims, I stated that for these claims to proceed, he must "make
3   specific allegations related to each claim that include: (1) the nature of the fiduciary duty allegedly
4   breached (for example, the provision of the IUPAT constitution at issue); (2) specific allegations
5   as to who breached that duty and how; and (3) when and how he requested that the union, its
6   governing body, or officers sue or secure other appropriate relief as to the issue."  *See* Order
7   Granting Mot. to Dismiss ("Second MTD Order") [Dkt. No. 34] 8:9-13.

8        The defendants argue that Taylor failed to specifically identify the fiduciary duties
9   allegedly breached, the conduct by the defendants that allegedly constituted that breach, and when
10  and how he requested that a particular union entity sue or secure relief.  MTD at 10:24-13:13.

11       The defendants are correct regarding some of Taylor's claims.  For example, Claim Three
12  alleges that Bigelow, Robles, and Williams violated their fiduciary duties to the union by
13  negotiating, approving, or reviewing, a collective bargaining agreement that provided for the $1.13
14  contribution to the training trust, despite knowing that the trust had been terminated.  SAC ¶¶ 110-
15  112.  Taylor alleges that this violated certain provisions of the IUPAT constitution and harmed the
16  membership.  *Id*. ¶¶ 46-47.  But nowhere does he allege that he requested that the union, its
17  governing body, or its officers sue or secure other relief as to this issue, or that that particular
18  entity failed to do so.  *See generally* SAC.  And it appears that the requested audit pre-dated these
19  agreements, which were allegedly negotiated in April 2018 and April 2021.  *Id*. ¶ 46.

20       The same flaw sinks Claims Four (alleging that Northam, Bigelow, and Robles breached
21  their fiduciary duties and violated Local 510's collective bargaining agreement by inaccurately
22  reporting training under the agreement with the state) and Five (alleging the same, but arising from
23  the assignment of apprentices to Freeman Expositions).  *See id*. ¶¶ 113-122.  Even reading the
24  SAC generously, Taylor does not plead that he requested that the union, its governing body, or its
25  officers sue or secure other relief related to the alleged violations of the collective bargaining
26  agreements.  *See generally* SAC.  That alone is enough to dismiss the claims.

27       Claim Twelve fails on similar grounds.  It alleges that Williams, Robles, and Bigelow
28  violated their fiduciary duties by "as a policy, withholding members' earned compensation for

years without fiscal need or justification; by not informing the members of compensation information that directly affects their earnings and inserting into the collective bargaining agreement . . . earnings compensation changes without informing members." *Id*. ¶ 154. It further alleges that Williams was "informed of these actions and activities" but "has taken no appropriate action." *Id*. ¶ 155. Taylor cites in support Paragraphs 29, and 90 through 94. *Id*. ¶ 156. Although Taylor alleges that he requested information about the pension fund and those requests were not acted upon, he does not specifically allege any requested action related to the alleged backfilling itself, nor the terms of the collective bargaining agreement. The distinction makes a difference. If Taylor alleges that the policy of backfilling violates section 501, he must allege that he requested that the union, its governing body, or its officers sue or secure appropriate relief regarding that policy. He has not done so. Moreover, his requests for financial information are covered in other claims that, for reasons stated below, may proceed as pleaded.

Taylor has sufficiently pleaded violations of section 501 in the remaining claims. Claims One and Two allege that Williams, Robles, and Bigelow violated the IUPAT constitution by failing to provide financial reporting to the membership and refused requests for appropriate relief, including by failing to take action on the membership-approved audit. *Id*. ¶¶ 96-100. Claim Two makes similar allegations against Collins. *Id*. ¶¶ 101-107. This provides the specificity that was lacking in the previous complaint, as it describes the nature of the fiduciary duty at issue, alleges who breached that duty and how, and states when and how Taylor requested relief as to the issue. *See* Second MTD Order at 8:9-13.

Claim Six is admittedly thinner. Taylor alleges that Williams, Robles, Bigelow, Collins, Northam, and McBride violated the IUPAT constitution by blocking and interrupting his speech at union meetings or taking or encouraging actions at meetings "designed to suppress . . . and dissuade" members from exercising their rights to attend those meetings, participate in deliberations, or express their views. SAC ¶ 125. As the Ninth Circuit held in *Stelling*, allegations that a defendant "denied the membership of the union" a constitutionally guaranteed right "is a sufficient assertion of a breach of trust" to invoke section 501. *Stelling*, 587 F.2d at 1387. Taylor also alleges that he requested that Williams take action in response, but that he failed to do so.

8

SAC ¶¶ 58, 126.  This sufficiently satisfies the barebones requirements: Taylor alleges the nature of the fiduciary duty at issue, who breached that duty and how, and when and how he requested relief that was not acted upon.  Moreover, the defendants do not directly challenge whether these specific allegations fit within a section 501 claim.  *See* MTD at 10:1-13:13.  I will allow this claim to proceed for now, as the threshold for pleading is relatively low.

Claims Seven, Eight, Nine, Ten, and Eleven all allege that Robles and Bigelow violated provisions of the IUPAT constitution and their fiduciary duties to the membership by violating their rights to participate, deliberate, and vote in the August 4, 2018; April 17, 2021; August 21, 2021; September 10, 2021; and March 30, 2022, referendums.  SAC ¶¶ 127-151.  The same claims allege that Williams was informed of their actions yet "took no appropriate corrective action as requested."  *See id*.  Again, Taylor has sufficiently alleged the fiduciary duties allegedly breached (the sections of the IUPAT constitution), who breached that duty and how (Robles, Bigelow, and Williams, in part by failing to give proper notice or moving forward with the referendums), and that he requested that a union officer (Williams) secure appropriate relief.  *See* SAC ¶¶ 61-85.  The Ninth Circuit has held that an allegation that a union official denied the union's membership the right to vote is a "sufficient assertion of a breach of trust" to invoke section 501.  *Stelling*, 587 F.2d at 1387.  Taylor has sufficiently alleged such a claim here—at least for pleading purposes.

In sum, Taylor has sufficiently alleged violations of section 501 in all of his claims except for Claims Three, Four, Five, and Twelve.  To the extent that these four claims arise under section 501, they are DISMISSED without leave to amend.  The other claims may proceed as pleaded.

**II.     LMRDA SECTION 101 CLAIMS**

Title I of the LMRDA "provides union members with an exhaustive 'Bill of Rights' enforceable in federal courts."  *Local No. 82 v. Crowley*, 467 U.S. 526, 536 (1984).  Generally, that "Bill of Rights" "is designed to guarantee every union member equal rights to vote and otherwise participate in union decisions, freedom from unreasonable restrictions on speech and assembly, and protection from improper discipline."  *Id*. (citation omitted).

Section 101(a)(1) guarantees union members

> equal rights and privileges within such organization to nominate candidates, to vote

>in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

29 U.S.C. § 411(a)(1). Section 101(a)(2) provides "the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organizations his views, upon candidates in an election of the labor organization or upon any business properly before the meeting." *Id*. § 411(a)(2).

Taylor asserts violations of Title I in Claims Two and Six through Twelve.[1] *See* SAC ¶¶ 96-156. Because the SAC does not specify whether Taylor brings those claims under sections (a)(1) or (a)(2), I will evaluate them under both.

### A. Section 101(a)(1)

"Section 101(a)(1) is an anti-discrimination provision, pure and simple." *Ackley v. W. Conf. of Teamsters*, 958 F.2d 1463, 1473 (9th Cir. 1992). To state a claim under this section, "a union member must allege a denial of rights accorded to other members." *Id*. Section 101(a)(1) "is not a substantive grant of voting rights . . . [r]ather, the provision requires *equal* voting rights; it requires that rights given to some members must be given to all, subject only to reasonable rules or regulations." *Sergeant v. Inlandboatmen's Union of the Pac.*, 346 F.3d 1196, 1201 (9th Cir. 2003); *see also Fox v. Bakery, Confectionery, Tobacco Workers & Grain Millers Int'l Union, Loc. No. 24, AFL-CIO*, No. C-08-05737-WHA, 2010 WL 682458, at *11 (N.D. Cal. Feb. 24, 2010) (granting summary judgment because of a "complete absence of evidence that plaintiff was treated differently with respect to his membership rights than his fellow union officers and members").

The defendants argue that Taylor does not allege that they discriminated against him "in any way," particularly regarding the elections that he takes issue with. MTD at 16:3-5. They focus on his allegations regarding notice, none of which, they argue, "state that any defendant

---

[1] The defendants argue that these claims, along with those asserted under sections 301 and 302 of the LMRA, must be dismissed because they "exceed[] the scope of allowable amendment" under my previous Order dismissing the FAC. MTD at 8:7-8. They construe my prior Order too narrowly. At that point, all Taylor had alleged were section 501 claims, so my Order focused on the deficiencies that needed to be addressed for those claims to proceed. *See* Second MTD Order at 8:8-14. Although I stated the specific allegations that Taylor needed to include on amendment for those claims to survive, I did not limit any amendment solely to those allegations. *See id*.

10

specifically treated Taylor differently than other rank and file members." *Id*. at 16:5-8.

The defendants are correct. The election-related claims—Claims Seven, Eight, Nine, Ten, and Eleven—allege a series of wrongdoing, including that certain defendants failed to provide the membership with adequate notice of the elections and what was being voted on. *See* SAC ¶¶ 127-151. But Taylor's allegations relate to the membership as a whole; he does not allege that he was denied rights accorded to other union members. *See id*.

The same is true for Claims Two and Twelve. It is not clear how Taylor ties these claim—which focus on the alleged failure to respond to the motion for an audit and the "backfilling" of the pension fund—to the rights articulated in section 101(a)(1). *See id*. ¶¶ 101-107, 152-156. Regardless, he does not allege that in refusing to carry out the motion or by backfilling the fund, union officials denied him any rights accorded to other members. Instead, he alleges improprieties that affected the union membership as a whole.

Claim Six is similarly flawed, although it is a closer call. Taylor alleges that Williams, Robles, Bigelow, Collins, Northam, and McBride have—by, among other things, blocking his "speech, views, arguments, and opinions at union meetings," engaging in conduct "designed to suppress the members, including me, in exercising their rights under the IUPAT constitution and the LMRDA," and dissuading members "from exercising their rights"—"infringed the rights of myself and the members to attend membership meetings [and] participate in deliberations" in violation of the LMRDA. *Id*. ¶ 125. The specific allegations focus on the purported treatment of Taylor at meetings, including that he was interrupted, shouted at, and discouraged from speaking. *Id*. ¶ 55-58. But Taylor does not specifically allege that he was denied any rights accorded to other members. Instead, he frames this claim more broadly, alleging that these actions had a "chilling effect on all members" and "harmed not only my rights but every union member's right to speech and assembly." *See, e.g., id.* at ¶¶ 56-57; *see also* ¶ 125 (alleging that the named defendants "infringed the rights of myself and the members").

Because Taylor has not alleged that he was denied rights accorded to other union members, he has not stated a plausible claim arising under section 101(a)(1).

### B. Section 101(a)(2)

"To state a cause of action for a violation of section 101(a)(2), a union member must allege facts showing that: (1) he or she exercised the right to oppose union policies; (2) he or she was subjected to retaliatory action; and (3) the retaliatory action was a direct result of his or her decision to express disagreement with the union's leadership." *Casumpang v. Int'l Longshoremen's & Warehousemen's Union, Loc. 142*, 269 F.3d 1042, 1058 (9th Cir. 2001) (citation and internal modifications omitted). Section 609 of the LMRDA prohibits a union and its officials from fining, suspending, expelling, or otherwise disciplining a member for "exercising any right to which he is entitled under the provisions of this chapter." 29 U.S.C. § 529.

The problem with any claims arising under section 101(a)(2) is that Taylor does not sufficiently allege that he was subjected to retaliatory action as a result of his decision to express his disagreement with the union's leadership. The SAC alleges that McBride and Northam interrupted Taylor and shouted as he spoke during a February 3, 2022, union meeting. SAC ¶ 56. It further alleges that these "spontaneous statements . . . demonstrate clearly the obvious fact that this was intentional intimidation and retaliation for this suit." *Id*. ¶ 58. But the SAC does not allege that the union or its officers took any disciplinary action against Taylor as a result nor that it denied him the opportunity to speak at the meetings. *See generally* SAC. At most, Taylor alleges that he was interrupted—and he does not offer any authority showing that this constitutes retaliatory action as required to state a claim under section 101(a)(2). In addition, his allegation that he has been "the target of retaliation in other ways by persons named and unnamed here" is too vague and conclusory to suffice. *See id*. ¶ 59. Without sufficiently alleging that he was subjected to retaliatory action, his claims cannot proceed under section 101(a)(2).

To the extent that Taylor's claims are pleaded under section 101(a)(1) or (a)(2) of the LMDRA, they are DISMISSED without leave to amend.

### III. LMRA SECTION 301 CLAIMS

Under section 301 of the LMRA, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations, may be brought in any district court of the United States having

12

Case 3:21-cv-08712-WHO   Document 47   Filed 08/29/22   Page 13 of 15

jurisdiction of the parties," regardless of the amount in controversy or citizenship of the parties. 29 U.S.C. § 185(a). A breach of a union's collective bargaining contract falls within section 301. *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 247 (1962).

Taylor asserts three claims under section 301 of the LMRA: Claims Three, Four, and Five. SAC ¶¶ 109, 114, 118. Williams, Robles, and Bigelow are named in all three claims; Northam in Claims Four and Five. *Id*. These claims arise from the named defendants' alleged violations of Local 510's collective bargaining agreement, primarily by including the $1.13 for the terminated training trust, inaccurately reporting training under the agreement with the state, and by assigning apprentices to Freeman Expositions. *See id*. ¶¶ 108-122.

The defendants argue that a section 301 claim can only be brought against the union itself, not the individual defendants. MTD at 18:9-17. They contend that because Taylor asserts the claims against Williams, Robles, Bigelow, and Northam, and makes no specific allegations of wrongdoing by the IUPAT itself that fall under section 301's purview, the claims arising under section 301 should be dismissed. *See id*. at 18:9-27.

The defendants somewhat overstate the law when it comes to the individual defendants. They cite two cases—*Atkinson* and *Evangelista v. Inlandboatmen's Union of Pacific*, 777 F.2d 1390, 1400 (9th Cir. 1985)—for the proposition that section 301 claims cannot be brought against individual union officers. *Id*. at 18:9-17. But those cases (and others relying on them) state only that individual union officers cannot be sued for *damages* under section 301. *See Atkinson*, 370 U.S. at 249 ("[W]e hold that when a union is liable for damages for violation of the no-strike clause, its officers and members are not liable for these damages."); *see also Service Emp. Int'l Union v. Nat'l Union of Healthcare Workers*, 598 F.3d 1061, 1070 (9th Cir. 2010) ("[I]n *Atkinson* . . . the Court held that section 301(a) does not authorize a damages action against individual union members when their union is liable for violating . . . a collective bargaining agreement."); *see also* 29 U.S.C. § 185(b) ("Any money judgment against a labor organization . . . shall be enforceable only against the organization as an entity . . . and shall not be enforceable against any individual member or his assets."). The Ninth Circuit has held that section 301(a) permits suits seeking injunctive relief against individual union officers. *Service Emp.*, 598 F.3d at 1072.

The problem is, the injunctive relief that Taylor seeks does not cover the alleged misdeeds underlying the section 301 claims. He seeks audits of the union's finances, training trust, and pension plan; a nullification and rerunning of the referendums; the distribution to all union members of written notices of their rights; and that "all IUPAT officers, employees, agents, etc., be enjoined from engaging in activity or actions which violate and/or, in retaliatory behavior and/or intimidation" against IUPAT members engaging in their rights. SAC at 60-62. Even reading the requested relief generously, none of it relates to the alleged violations of the collective bargaining agreements. Taylor has not plausibly stated a claim under section 301 because he has not sought injunctive relief against Williams, Robles, Bigelow, or Northam stemming from their alleged violations of those agreements. Nor has he alleged any violations by the IUPAT itself. *See* SAC ¶¶ 108-122. The section 301 claims are DISMISSED without leave to amend.[2]

## IV.   LMRA SECTION 302 CLAIM

Finally, the defendants argue that Claim Five should be dismissed because it appears to assert a claim under section 302 of the LMRA, which the defendants contend is a criminal statute that does not provide Taylor a private cause of action for damages. MTD at 19:13-20:3.

Section 302 prohibits employers from paying, lending, or delivering, or agreeing to pay, lend, or deliver, "any money or other thing of value" to union officers or employees "with intent to influence him in respect to any of his actions, decisions, or duties" as a union officer or employee. 29 U.S.C. § 186(a)(4). It also declares it unlawful "for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a)." *Id*. § 186(b)(1).

Although Taylor does not expressly cite section 302 in Claim Five, it does appear, based on the SAC's language, that he asserts a claim under this section. *See* SAC ¶ 118. The SAC alleges that "it is illegal for a union officer or employee to accept anything of value to directly or indirectly influence other employees, union officers, etc., with respect to their actions, decisions, [and] duties as a labor organization employee or officer." *Id*

---

[2] Because I am dismissing the section 301 claims on these grounds, I need not address the defendants' argument that they are time-barred. *See* MTD at 19:1-12.

1   The defendants are correct in that section 302 subjects violators to criminal penalties. *See*
2   *id.* § 186(d). They are also correct that section 302 does not provide a private cause of action for
3   damages. *See National Union of Healthcare Workers v. Kaiser Found. Health Plan, Inc.*, No. C-
4   10-03686-WHA, 2013 WL 1616103, at *3-4 (N.D. Cal. Apr. 15, 2013) ("The private right of
5   action is limited to claims for injunctive relief."); *see also Souza v. Trs. of W. Conf. of Teamsters*
6   *Pension Tr.*, 663 F.2d 942, 945 (9th Cir. 1981). But they overlook the fact that Taylor also seeks
7   injunctive relief, which would be permitted under section 302.

Again, however, the problem is that the injunctive relief Taylor seeks is disconnected from any alleged violation of section 302. The requested audits, rerunning of the referendums, notification of rights, and injunction prohibiting IUPAT officers, employees, and agents from violating members' rights, or retaliating against or intimidating members does not cover the section 302-related conduct alleged in Claim Five: that Robles, Bigelow, and Northam received goods and other things of value from Freeman Expositions. *See* SAC at 61-62, ¶ 119. Taylor does not appear to seek injunctive relief for the alleged violation of section 302. As that is the only private right of action permitted, any claim arising under section 302 must be DISMISSED.

## CONCLUSION

The defendants' motion is GRANTED in part and DENIED in part. Claims One and Two, and Six through Eleven may proceed, but only under section 501 of the LMDRA. Claims Three, Four, Five, and Twelve are DISMISSED in their entirety, without leave to amend. At this point, Taylor has had sufficient opportunity to state a claim for relief, which he has now done.

A Case Management Conference is scheduled for September 27, 2022. The parties must meet and confer regarding a proposed case schedule, which should be included in their joint Case Management Statement. That joint statement is due by September 20, 2022.

**IT IS SO ORDERED.**

Dated: August 29, 2022



William H. Orrick
United States District Judge

15